## CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 2, 2018

July 2, 2018

**BY ECF**

Hon. Katherine P. Failla, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        **Re:**   *Garcia, et al. v. Sugio, LLC, et al.*
                *Case No. 17-CV-6964 (KPF) (KNF)*

Dear Judge Failla,

      We are counsel to the plaintiffs in the above-referenced matter, and jointly submit this correspondence together with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this dispute, which was negotiated at arm's length between experienced counsel.

        **I.**    *The Need for the Court's Approval of the Agreement*

      As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See D.A. Schulte, Inc., v. Gangi,* 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Plaintiffs' Claims for Unpaid Wages

Plaintiffs filed their complaint on September 13, 2017, asserting causes of action pursuant to the FLSA and New York Labor Law. Plaintiffs consist of two (2) former employees of the defendants' restaurant. A brief synopsis of each plaintiff's claim is set forth here:

- Paulo Garcia:

Mr. Garcia alleges that he was hired by the defendants in or about February 2009 to work as a food delivery worker and assistant busboy. His employment ended on or about June 30, 2017. Although his work hours fluctuated each week, Mr. Garcia typically worked approximately forty-seven (47) hours per week.

With respect to his pay, Mr. Garcia alleges he was paid as follows:

- September 2011 (start of the limitations period) – December 2011: $330 per week straight time for all hours worked.

- January 2012 – July 2014: $5 per hour for the first forty (40) hours per week, and $8.63 for each hour in excess of forty (40).

- August 2014 – May 2015: $5.65 per hour for the first forty (40) hours per week, and $9.65 for each hour in excess of forty (40).

- July 2015 – May 2016: $6.50 per hour for the first forty (40) hours per week, and $10.88 for each hour in excess of forty (40).

- June 2016 – December 2016: $7.50 per hour for the first forty (40) hours per week, and $12 for each hour in excess of forty (40).

- January 2017 – June 30, 2017: $8.35 per hour for the first forty (40) hours per week, and $12.85 for each hour in excess of forty (40).

- Alfredo Morales

Mr. Morales alleges that he was hired by the defendants in or about February 2011 to work as a food delivery worker. His employment came to an end on or about July 29, 2017. Although his work hours fluctuated each week, Mr. Morales typically worked between twenty-five (25) and thirty (30) hours per week.

With respect to his pay, Mr. Morales alleges he was paid as follows:

- September 2011 (start of the limitations period) – July 2014: $5 per hour

- August 2014 – July 29, 2017: $7.50 per hour

In addition to unpaid minimum wages and overtime compensation, plaintiffs allege that the defendants misappropriated tips associated with credit card payments on food delivery orders made through seamless web and grub hub. More specifically, plaintiffs allege that the defendants deducted between 13.8% and 15% from plaintiffs' credit card tips for each delivery made and paid for by credit card through those food ordering websites for purposes of recovering commission fees charged to the defendants by those sites.

Based on the allegations in the complaint, plaintiffs initially calculated that had they prevailed at trial on *all* of their claims, they could have recovered approximately $60,000 in underlying unpaid minimum wages and overtime compensation, with an equal amount in liquidated damages, plus an additional $30,000 in misappropriated tips.

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $150,000 to resolve all of plaintiffs' wage and hour claims against the defendants, which is to be paid in full within fourteen (14) days of the Court approving the terms of the Agreement. Based on length of employment, hours worked, and rates paid, each of the plaintiffs will receive a *pro rata* share of the settlement. The parties believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiffs' claims.

### III.    The Agreement is Fair and Reasonable

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of extensive negotiations. In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores*, *supra*, 679 F. 2d at 1354)).

Here, this settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

While the parties are generally (although not entirely) in agreement as to the number of hours that plaintiffs worked each week, significant disputes exists as to the following issues:

(a)     Work Weeks

Defendants contend that Mr. Morales began his employment in February 2012, not February 2011 as alleged. Defendants further argue that plaintiffs' calculations fail to take into account weeks in which plaintiffs did not work a full week either because of an absence or because the restaurant was closed for the day or part of the day. For instance, the restaurant is closed each year on New Years' Day, the Fourth of July, Labor Day, and New Years' Eve. The restaurant is only open for dinner on Memorial Day, Thanksgiving Day, and Christmas.

(b)     Tip Credit

Defendants deny that it improperly paid plaintiffs based on the tip credit minimum wage rate available to tipped service workers. According to the defendants, once a time clock was implemented starting in or about August 2014, plaintiffs were on notice as to what their work hours were and what rates they were being paid. And, prior to the institution of the time clock, the defendants contend that plaintiffs knew what their pay rates and work hours were because they were provided with handwritten documents with their hourly rates of pay.

(c)     Underpayment of Tips

Defendants deny that they unlawfully misappropriated tips from plaintiffs. According to the defendants, any deductions that Seamless and GrubHub took from tips were properly deducted from Messrs. Garcia and Morales's pay pursuant to this Court's opinion in Koodo Sushi. Defendants contend that the only potentially improper deductions were those that occurred starting on August 1, 2015, when Seamless and GrubHub stopped deducting from plaintiffs' tips as part of its commission charge. Furthermore, the defendants argue that they are permitted to deduct from plaintiffs' tips for the 3.05% credit card processing fee. Therefore, any calculation regarding misappropriated tips should be confined to the improper 15% deduction that Sugio LLC took from plaintiffs' tips from August 1, 2015 through July 29, 2017, and should take into account the permitted 3.05% credit card processing fee.

(d)     Meal Break/Credit

There is a dispute between the parties as to whether plaintiffs were given a designated meal break. Plaintiffs contend that they were not provided with a designated break during their shift. Defendants, meanwhile, contend that all employees received a full one-hour break each day, and that they were each provided with up to two (2) free meals per day. According to the defendants, the meal credit, which amounts to between $2.50 and $5.15 per meal per day (depending on the period of employment), should be deducted from plaintiffs' damages calculations.

    (e)    <u>Statutory Damages/Wage Notice and Statements</u>

A dispute exists as to whether plaintiffs are entitled to statutory damages for the defendants' alleged failure to provide plaintiffs with wage notices and weekly wage statements. Defendants produced some wage notices for 2015 and 2016, but not for prior nor subsequent years or each time Mr. Garcia's rate of pay changed.

By settling now, plaintiffs receive all of their calculated unpaid wages and tips even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiffs, they made the decision to accept the defendants' offer.

### IV.   *Application for Attorneys' Fees*

Pursuant to plaintiffs' retainer agreement, counsel will retain 33.33% of the net proceeds of the settlement after out of pocket expenses ($500 for filing and service) are deducted. As such, plaintiffs' counsel seeks a total of $49,828 in fees, plus an additional $500 in costs for a total of $50,328, which is slightly less than the firm's lodestar.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is slightly more than the fees requested herein. Attached hereto is a copy of Cilenti & Cooper, PLLC's billing record for work performed on this matter. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegals) have previously been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et*

Hon. Katherine P. Failla, U.S.D.J.
July 2, 2018
Page 6

*al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli,* No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.,* No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.,* No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016).

    For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

    We thank the Court for its continued attention to this matter.

    Respectfully submitted,

    */s/ Justin Cilenti*

Enclosures

cc: Joshua Zuckerberg, Esq. (by ECF)

```
The Court is in receipt of the parties' proposed settlement.  (Dkt.
#26).  The Court has reviewed the proposal in light of Cheeks v.
Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), Lopez v.
Nights of Cabiria, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), and
Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and
finds the settlement is fair.

While the Court finds that the attorneys' fees at a rate of 33% -- as
provided for in Paragraph A(1)(a) of the Settlement Agreement -- are
reasonable, the Court does not make any finding as to the
reasonableness of counsel's hourly rates.

Finally, the Court does not read Paragraph F of the Settlement
Agreement to prevent Plaintiffs from honestly testifying in an
unrelated proceeding if called upon to give information.
```

Dated:   July 2, 2018         SO ORDERED.
           New York, New York

                                        */s/ Katherine Polk Failla*

                                     HON. KATHERINE POLK FAILLA
                                     UNITED STATES DISTRICT JUDGE